HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY D. WEIDENHAMER,

        Plaintiff,

    v.

EXPEDIA, INC.,

        Defendant.

CASE NO. C14-1239RAJ

ORDER

## I.  INTRODUCTION

This matter comes before this Court on Plaintiff Jeffrey D. Weidenhamer's ("Plaintiff") Motion for Class Certification.  Dkt. # 33.  This case pertains to Defendant Expedia, Inc.'s ("Defendant" or "Expedia") alleged false statements concerning air fares – specifically, statements during online airfare purchases that baggage fees were lower than they actually were or misleading "pop-up" statements for 5% off app purchases that were in fact false.  *See* Dkt. # 1-2 ("Compl.") ¶¶ 3-4.  Plaintiff has now brought claims on behalf of a nationwide class of Defendant's customers under the Washington Consumer Protection Act ("CPA") (Wash. Rev. Code § 19.86), the Washington Sellers of Travel Act ("WSTA") (Wash. Rev. Code § 19.138), and for unjust enrichment.  *Id.* ¶¶ 51-71.

## II.  BACKGROUND

This Court has previously described the factual allegations underlying this suit, but it repeats them here for purposes of clarity.  *See* Dkt. # 27.

ORDER – 1

In April 2014, Plaintiff visited the Expedia website to purchase airfares for his family of four.  Compl. ¶ 21.  He could not complete the purchases on the website.  *Id.*  A pop-up window appeared with this message:

> It looks like we have an issue with the site.  We're working to fix this as soon as possible.  Here are some ways to find your perfect trip in the meantime:  Download the Award-Winning Expedia App: Our app may be available even if the site is not.  With it, you can book flights and hotels or check all your Expedia itineraries from anywhere.  The app won the People's Voice Webby Award and we think you'll like it too.  To say thank you for your patience, we'll also give you 5% OFF YOUR APP PURCHASE with the code MOBILEGO.

Plaintiff did as the pop-up window suggested.  *Id.* ¶¶ 4, 21, 28.  He downloaded the app to his tablet computer and purchased four tickets.  *Id.* ¶ 21.  He did not receive a 5% discount.  *Id.* ¶ 29.

Plaintiff paid $398.30 for each of his tickets, for a total of $1593.20.  *Id.* ¶ 22. When the app displayed his fares for purchase, it advised him that the airline "may" charge a fee for checked baggage.  *Id.*  When Plaintiff clicked on a hyperlink for "additional fees," Expedia informed him that for the airline he chose, there would be no charge for each passenger's first checked bag.  *Id.* ¶ 23.  When Plaintiff arrived at the airport to take his flights, however, the airline informed him that fees applied to his family's first checked bags.  *Id.* ¶ 25.  Plaintiff and his family paid about $650 for their first checked bags.  *Id.*

In May 2014, Plaintiff complained to Defendant.  *Id.* ¶ 31.  He demanded redress including a credit equivalent to 5% of his family's total airfare to account for the discount he did not receive, changes to the Expedia website to correctly disclose when fares do not include baggage fees along with documentation of those changes, and a credit for $650 to account for the baggage fees that Expedia did not disclose.  *Id.* ¶ 32.

Defendant refused all of Plaintiff's requests.  *Id.* ¶ 33.  It informed Plaintiff that the 5% discount it had promoted did not apply to multiple-ticket purchases like the one Plaintiff made.  *Id.*  Defendant said nothing about Plaintiff's requests for changes to the

ORDER – 2

website, documentation of those changes, or a credit to account for the baggage charges. *Id.* ¶ 34.

Plaintiff, who lives in Ohio, contacted that state's Attorney General to relay his complaints about Expedia. *Id.* ¶ 35. When the Attorney General contacted Expedia to inquire about the dispute, Defendant chose to refund $79.66 (5% of the total that Plaintiff paid to Defendant) to Plaintiff's credit card. *Id.* ¶ 36. Defendant did nothing to respond to Plaintiff's request for changes to the website, documentation of the changes, or his request for a refund of the baggage fees he paid. *Id.* ¶ 37.

### III.  MOTIONS TO SEAL

One administrative matter must first be addressed. Both Parties have filed motions to seal documents attached to their papers. *See* Dkt. # 30; Dkt. # 76. These motions are unopposed.

Ordinarily, there is a strong presumption of public access to court files and the moving party bears the burden of overcoming this presumption. *See* Local Rules W.D. Wash. LCR 5(g). A "good cause" standard applies to motions to seal discovery documents attached to non-dispositive motions. *See In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012); *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678-79 (9th Cir. 2010). Courts have held that motions to certify a class are not dispositive motions. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2013 WL 163779, at *2 n.1 (N.D. Cal. Jan. 15, 2013) (citing cases); *Cty. of Santa Clara v. Astra USA, Inc.*, 257 F.R.D. 207, 215 n.7 (N.D. Cal. 2009).

The documents sought to be protected fall into two categories: (1) those relating to Defendant's business practices, such as an "a la carte air administration tool," airline ticketing agreements, and internal sales figures; and (2) customer personally identifying information. *See* Dkt. # 30 at 3-4; Dkt. # 76 at 1-2.

Defendant argues that the first category of documents relates to proprietary, confidential, and competitively sensitive information. Moreover, disclosure of this

ORDER – 3

information would, in Defendant's words, disadvantage Defendant.  This Court agrees and finds that Defendant has established good cause to seal this information.  *Cf. Apple Inc. v. Samsung Elec. Co.*, 727 F.3d 1214, 1224 (Fed. Cir. 2013) (applying Ninth Circuit law).

With respect to the second category, the Court finds that customers' personal identifying information is not relevant at this time or important to the public. Accordingly, Defendant's redaction of customer identifying information is permitted, particularly as the information relevant to this motion – namely the number of customers involved and the routes and fare classes on which they flew – is not redacted.

As such, the Court **GRANTS** both motions to seal.  Dkt. # 30; Dkt. # 76.

## IV.  LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  A court's decision to certify a class is discretionary.  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).  Federal Rule of Civil Procedure 23 ("Rule 23") guides the court's exercise of discretion.

Rule 23 "does not set forth a mere pleading standard."  *Wal-Mart Stores,* 131 S. Ct. at 2551-52.  Rather, Rule 23(a) requires a plaintiff to affirmatively demonstrate that the proposed class is sufficiently numerous, that it presents common issues of fact or law, that it will be led by one or more class representatives with claims typical of the class, and that the class representative will adequately represent the class.  *Id.* at 2552; *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); Fed. R. Civ. P. 23(a).  If the plaintiff satisfies the Rule 23(a) requirements, she must also show that the proposed class action meets one of the three requirements of Rule 23(b) "through evidentiary proof."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

ORDER – 4

In considering Rule 23's requirements, a court must engage in a "rigorous analysis," but a "rigorous analysis does not always result in a lengthy explanation or in-depth review of the record." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (citing *Falcon*, 457 U.S. 147, 161 (1982)). A court is neither permitted nor required to conduct a "preliminary inquiry into the merits" of the plaintiff's claims. *See Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (quoting *Wal-Mart Stores*, 131 S. Ct. at 2552 n.6).

## V. ANALYSIS

Plaintiff moves for this Court to certify the following class:

> All persons in the United States[1] who[2] (a) purchased airfares using Defendant's website or mobile application ("Expedia App") and after they completed their purchases were charged a higher baggage fee than Expedia disclosed at the times of purchase, and/or (b) who downloaded the Expedia App and purchased airfares using it but did not receive Expedia's promised 5% discount.[3][4]

Dkt. # 33 at 15.

---

[1] At the hearing, Plaintiff appeared to propose a geographic limitation to only *current* United States residents.

[2] At the hearing, Plaintiff proposed a temporal limitation for both classes, limiting them to the period from July 11, 2010 to September 17, 2014. This Court will adopt Plaintiff's proposal, given the CPA's four year statute of limitations. *See Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1309 (W.D. Wash. 2013) (citing R.C.W. § 19.86.120).

[3] It appears to this Court that Plaintiff is actually proposing to certify two classes for claims arising out of the two separate, but related instances of alleged wrongful conduct. For ease of reference, this Court will refer to the first class as the "baggage fee" class and the second class as the "MOBILEGO" class. The Parties agreed with the Court's characterization at the hearing.

[4] Plaintiff's current class definition is different than the one originally alleged in his Complaint. That one reads:

> All persons throughout the United States who purchased online airfares from Defendant using Defendant's U.S. website and/or the Expedia App and who, during July 2012 to the present (the "Class Period") were charged a higher baggage fee than Defendant represented at the time of their online purchase(s) and/or were denied the 5% discount on online purchases using the Expedia App.

Compl. ¶ 40.
ORDER – 5

**A. Adequacy of Representation**

Before proceeding, the Court addresses Rule 23(a)(4)'s requirement that in order for a class to be certified, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Generally speaking, this requires resolving two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985. Defendant does not dispute that Plaintiff and his counsel will adequately represent either class and the Court sees no reason why Plaintiff and his counsel will not do so.

**B. The Baggage Fee Class**

a. Is the Proposed Baggage Fee Class Ascertainable?

"Rule 23 does not explicitly contain a requirement that a class be ascertainable, however, many courts have found ascertainability to be a prerequisite to class certification."[5] *See e.g., Torres v. Mercer Canyons, Inc.*, 305 F.R.D. 646, 651 (E.D. Wash. 2015); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 564 (C.D. Cal. 2014); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 440 (N.D. Cal. 2014); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). "A class is sufficiently defined and ascertainable if it is 'administratively feasible for the court to determine whether a particular individual is a member.'" *In re ConAgra Foods, Inc.*, 302 F.R.D. at 565 (quoting *O'Connor*, 184 F.R.D. at 319). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2014 WL

---

[5] The Ninth Circuit has also, in dicta, acknowledged the existence of a "threshold ascertainability test" (*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.4 (9th Cir. 2014)) and has affirmed the denial of class certification for being unascertainable (*see Williams v. Oberon Media, Inc.*, 468 Fed. App'x 768, 770 (9th Cir. 2012)).

4652283, at *3 (N.D. Cal. Sept. 18, 2014) (quoting William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 3:3 (5th ed.)).

In other words, in order for a plaintiff to establish that a class is ascertainable, he must show that: "(i) members of the proposed class are readily identifiable by objective criteria, and (ii) it is administratively feasible to determine whether a particular person is a member of the class." *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 227 (N.D. Cal. 2015) (citing *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).  Nevertheless, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (quoting *O'Connor*, 184 F.R.D. at 319).

Plaintiff argues that baggage fee class members are readily identifiable through two objective criteria: (1) whether the person is a resident of the United States, and (2) whether she purchased airfare on Expedia's website or mobile app and thereafter was charged a higher baggage fee than was disclosed on Expedia's website or app.  *See* Dkt. # 90 at 5-6.  The Court agrees that these are objective criteria as they may be "proven directly," rather than depending "upon each putative class member's feelings and beliefs." *Xavier*, 787 F. Supp. 2d at 1089.

Whether it would be administratively feasible to determine whether a particular person is a member of the class is another question.  Defendant raises several concerns regarding the administrative feasibility of ascertaining the proposed baggage fee class.

First, Defendant argues that it does not know who actually read the estimated baggage fees displayed by Expedia's website.  *See* Dkt. # 77 at 12-13.  Defendant's argument gets at the issue of individual reliance – i.e., whether each plaintiff would have to prove that Defendant's alleged deceptive practice caused his injury.  Under the CPA, plaintiffs must establish proximate cause – that they would not have suffered an injury but for the defendant's unfair or deceptive practice.  *See Indoor Billboard/Washington,*

ORDER – 7

1   *Inc. v. Integra Telecom of Wash.*, 170 P.3d 10, 22 (Wash. 2007).  Proof of proximate

2   cause may take the form of individual reliance.  *See Schnall v. AT&T Wireless Servs.,*

3   *Inc.*, 259 P.3d 129, 137 (Wash. 2011).  Whether or not every customer saw the baggage

4   fee estimates and could therefore correspondingly rely upon those messages – and

5   Defendant provides some factual support disputing this – "is not an ascertainability issue

6   . . . it is properly construed in assessing predominance under Rule 23(b)(3)."[6]  *In re*

7   *NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMJEMX, 2015 WL

8   4881091, at *25 (C.D. Cal. Aug. 14, 2015) (citing *Mazza v. Am. Honda Motor Co.*, 666

9   F.3d 581, 596 (9th Cir. 2012)) (addressing issue in context of California's similar Unfair

10   Competition Law); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 567-68 (C.D. Cal. 2014);

11   *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500-01 (S.D. Cal. 2013).

12        Next, Defendant argues that identifying proposed class members would be

13   administratively unfeasible because it would require knowing what fees were displayed

14   to any given customer which would be impossible given the sheer volume and variation

15   of Expedia's business.  *See* Dkt. # 77 at 13.  Expedia allows customers to book flights on

16   398 airlines worldwide and, correspondingly, sells hundreds of thousands of flight

17   segments each day and millions a year.  *See* Dkt. # 81 (Anand Decl.) ¶ 2.  The airlines

18   have varying approaches to baggage fees, including by unbundling or rebundling such

19   fees from the base fare.  *Id.* ¶ 3.  Whether a baggage fee is charged separate from the base

20   fare – and the amount of the charge – varies from carrier to carrier and depends on

21   numerous other variables, such as the fare class, route, number of bags checked, and

22   whether the flier has a special status with the airline or has military status.  *See id.*  These

23   variations – along with regulatory and industry issues – require Expedia to maintain its

---

25   [6] The corresponding issue of whether an individualized inquiry defeats predominance under Rule

26   23(b)(3) often turns on whether the underlying deceptive practice was an omission (*see Grays
Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007)) or a
theory of fraud (*see Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 557 (W.D. Wash. 2008)).  *See*

27   *also Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493-RSM, 2013 WL 6276450, at *8 (W.D.
Wash. Dec. 4, 2013).

28   ORDER – 8

own "Air A La Cart Administration Tool" for baggage and other ancillaries. *Id.* ¶ 7.  As a result, Defendant's estimated baggage fee display depends on a matrix of "rules" that determine what fees are displayed based on numerous factors.  *Id.* ¶¶ 7, 8; Dkt. # 82 (LaFranchi Decl.) ¶¶ 4-5.  Defendant does not keep historical records of past estimated baggage fee displays and does not archive its estimated baggage fee display web pages; and the links in customers' itineraries point to Defendant's current estimated baggage fees.  Dkt. # 82 (LaFranchi Decl.) ¶ 7.  Consequently, Defendant argues that it has no means to historically determine which "rules" were activated and what fees were displayed to each customer for a particular flight without reconstructing multiple data points and then determining how the rules would have interacted.  *See id.*  And finally, even with this, Defendant argues that it would have to compare these reconstructed baggage fee displays against the airlines' historical baggage fee information, which it does not have access to and for which Plaintiff has not provided a means of determining. *Id.* at ¶ 8.  Compounding this difficulty is Defendant's third argument: because Defendant is not a party to baggage fee transactions, it cannot determine which customers chose to check baggage and what amounts were paid.  *See* Dkt. # 81 (Ananda Decl.) ¶ 9. Defendant has also presented evidence that some airlines waive baggage fees when presented with incorrect baggage fee information provided at the time of the purchase. *See* Dkt. # 88-1 (Bughaighis Decl.) Ex. A [Jeffrey Weidenhamer Depo. Tr.] at 128:7-11; Dkt. # 67 (Crowder Decl.) Ex. 5 at DL000021, DL000031.

The crux of Defendant's argument is that it would be inordinately difficult to identify individual class members due to: (1) incomplete records of past baggage fee estimate "rules" and the actual baggage fee policies for the carriers at the time, (2) the astronomical number of permutations created by the mix of carriers, flights, and fare classes offered by Expedia over the relevant period,[7] (3) individual customer variations,

---

[7] Many courts have expressed concerns about the ascertainability of a class where class members may have purchased one of a number of products bearing varying (and allegedly false) labeling

ORDER – 9

1   such as whether a refund or waiver of baggage fees was issued by the airline,[8] and (4)

2   purportedly incomplete or insufficient records from the airlines who actually charged the

3   baggage fees.[9]

4       Plaintiff argues that – in spite of Defendant's concerns – it would be

5   administratively feasible to ascertain class members by referring to (1) Defendant's

6   internal records of air travel sales[10] and (2) customers' records showing whether they

7   incurred additional baggage fees at an airport that did not match Defendant's disclosures.

8   Dkt. # 33 at 16-17.  But this approach amounts to nothing more than throwing the

9   proverbial spaghetti at the wall to see what sticks.  First, Plaintiff presupposes that

10  historical baggage fee display information exists, despite Defendant's representations and

11  all evidence to the contrary.  Second, Plaintiff does not identify what he plans to do with

12  any of this information or how it identifies actual class members – that can only be done

13  with some method of identifying the customers who *potentially received the problematic*

14  *baggage fee displays*.

15  

16  and packaging.  *See e.g., Kosta*, 308 F.R.D. at 229 (N.D. Cal. 2015); *Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014).

17  [8] Some courts have endorsed an "overbreadth" approach to ascertainability.  *See Lilly v. Jamba
18  Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (citing cases); *see also Booth v. Appstack, Inc.*,
    No. C13-1533JLR, 2015 WL 1466247, at *15 (W.D. Wash. Mar. 30, 2015); *Turcios v. Carma
19  Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477,
    483 (N.D. Cal. 2011) (modifying class definition because it included customers who had already
20  received refunds by returning allegedly defective notebook computers); *but see In re NJOY, Inc.
    Consumer Class Action Litig.*, 2015 WL 4881091 at *24 (holding that an over-inclusive class
21  definition need not defeat certification entirely).

22  [9] Some courts have rejected classes for being unascertainable where plaintiffs have attempted to
    rely on incomplete national retailer records to identify class members.  *See e.g., In re Clorox
23  Consumer Litig.*, 301 F.R.D. 436, 440-41 (N.D. Cal. 2014); *cf. Sethavanish v. ZonePerfect
    Nutrition Co.*, No. 12-2907-SC, 2014 WL 580696, at *6 (N.D. Cal. Feb. 13, 2014) (finding class
24  was not ascertainable because plaintiff failed to present a method for determining class
    membership).  Other courts have permitted class actions to continue despite the lack of retailer
25  records, provided that proposed class definitions use objective criteria to identify class members
    and the plaintiffs craft and present a detailed notice plan for class members.  *See e.g., Allen v.
26  Similasan Corp.*, 306 F.R.D. 635, 643-44 (S.D. Cal. 2015); *Lilly*, 308 F.R.D. at 238-39.

27  [10] More specifically, Plaintiff proposes using "Expedia's records of air travel sales that contain
    customer names, email addresses, itineraries, fare classes, baggage fee disclosures (*i.e.,* links
28  through customer itineraries) and credit card information."  Dkt. # 33 at 16-17.

ORDER – 10

Perhaps anticipating this issue, at oral argument, Plaintiff suggested that mining through Defendant's internal records could reveal "hot spots" meriting further investigation, and to identify the actual problematic displays.  Plaintiff points to Defendant's interrogatory responses as an example of such a "hot spot" – specifically, Virgin Australia SaverLite fares from February 13, 2013 to July 28, 2014.  *See* Dkt. # 90 at 6 (citing Dkt. # 39 (Crowder Decl.) Ex. 6).

But Plaintiff has not presented any evidence to suggest that this is somehow a meaningful, reliable method for identifying problematic carriers and fare classes on Expedia.  Ultimately, Plaintiff's proposed "hot spot" approach amounts to nothing more than a haphazard look through internal emails and anecdotal customer and carrier complaints.  Plaintiff has not shown that this approach is likely to identify any proportion (much less a significant proportion) of the affected carriers, fare classes, and routes.  And, more to the point, even assuming that this approach was taken, Plaintiff has not shown that this information could be used to actually identify class members.  For example, there is no evidence that these specific complaints could be used to generate historic baggage fee display information.

In a similar case, this Court denied class certification in part because the plaintiffs could not identify class members, despite having conducted rigorous spreadsheet and statistical analysis.  *See Boucher v. First Am. Title Ins. Co.*, No. C10-199RAJ, 2012 WL 3023316, at *4-6, *10 (W.D. Wash. July 24, 2012).  Plaintiff here has done nowhere near as much work to show that identifying class members is possible, much less administratively feasible.  In fact, this Court has often been left on its own to speculate as to how Plaintiff intends to proceed, only to be met with conclusory or boilerplate assertions that any problems can be addressed further down the line.

At this juncture, the Court finds that Plaintiff has not demonstrated that the baggage fee class is ascertainable and has serious reservations as to whether such a potentially large and unwieldy class could be ascertained.  Nevertheless, because "[a]

ORDER – 11

1   lack of ascertainability alone will not defeat class certification," the Court continues to

2   analyze whether the requirements of Rule 23 have been met. *See Algarin v. Maybelline,*

3   *LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) (citing *Red v. Kraft Foods, Inc.*, No. CV 10–

4   1028–GW(AGRx), 2012 WL 8019257, at *6 (N.D. Cal. Apr. 12, 2012)).

5         b.   Is the Proposed Baggage Fee Class Sufficiently Numerous?

6         Before a class can be certified, the Court must determine that it is "so numerous

7   that joinder of all members is impractical." *See* Fed. R. Civ. P. 23(a)(1). There is no set

8   numerical cutoff used to determine whether a class is sufficiently numerous; courts must

9   examine the specific facts of each case to evaluate whether the requirement has been

10  satisfied. *See Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446

11  U.S. 318, 329-30 (1980). "As a general rule, [however,] classes of 20 are too small,

12  classes of 20–40 may or may not be big enough depending on the circumstances of each

13  case, and classes of 40 or more are numerous enough." *Keegan v. Am. Honda Motor Co.,*

14  *Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (quoting *Ikonen v. Hartz Mountain Corp.*, 122

15  F.R.D. 258, 262 (S.D. Cal. 1988)).

16        Plaintiff argues that the baggage fee class is sufficiently numerous by pointing to

17  Defendant's notice of removal. *See* Dkt. # 33 at 11-12. Defendant argues that simply

18  pointing to the number of customers who have purchased fares during the period in which

19  the incorrect baggage fee information was displayed is not enough to establish

20  numerosity. *See* Dkt. # 77 at 17.

21        "A court may make common sense assumptions to support a finding that joinder

22  would be impractical." *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal.

23  2004) (citing Newburg § 3:3 (4th ed.)). That is certainly the case here. Defendant admits

24  that at least 2,899 customers were potentially affected by its incorrect baggage fee

25  information relating only to Virgin Australia SaverLite fares between December 2013

26  and March 2014. *See* Dkt. # 82 (LaFranchi Decl.) ¶ 19, Ex. F. Common sense dictates

27  that at least some proportion of *these* customers (much less the rest of the Defendant's

28  ORDER – 12

customers over any relevant time period) chose to check their bags – and even just a one or two percent rate would probably be sufficient to establish numerosity.

Adding to this, it is reasonable to conclude that some proportion of these potential class members is located outside of Washington; Defendant asserts that "[o]ver two thirds of Plaintiffs' proposed class is resident outside of Washington State" in support of its Notice of Removal.  *See* Dkt. # 3 (Gunderson Decl.) ¶ 4.  Geographic dispersion of class members is relevant in assessing impracticality of joinder.  *See Rivera v. Holder*, 307 F.R.D. 539, 550 (W.D. Wash. 2015) (citing *McClusky v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673 (W.D. Wash. 2010)).

Numerosity has been met with respect to the baggage fee class.

c.  Are There Questions of Law or Fact Common to the Baggage Fee Class?

In order for the Court to certify a class, it must also find that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551.  "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.*  Instead, the Court must find that determination of a common contention's truth or falsity "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  In other words, what matters is not whether common questions are raised, but whether the classwide proceeding can generate "common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  "[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Amgen Inc.*, 133 S. Ct. at 1194-95); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

Plaintiff alleges that Defendant violated the WSTA, which provides that "[i]n addition to any other penalties or remedies under chapter 19.86 RCW [the CPA], a person

ORDER – 13

who is injured by a violation of this chapter may bring an action for recovery of actual damages, including court costs and attorneys' fees." *See* RCW § 19.138.280.  Plaintiff contends that Defendant violated the WSTA's restrictions on advertising, which state, "[a] seller of travel shall not advertise any travel services are or may be available unless he or she has, prior to the advertisement, determined that the product advertised was available at the time the advertising was placed." *Id.* § 19.138.030.  That provision further specifies that "[i]t is the responsibility of the seller of travel to keep written or printed documentation of the steps taken to verify that the advertised offer was available at the time the advertising[11] was placed" for at least one year after the placement of the advertisement. *Id.*

Plaintiff also argues that Defendant violated the WSTA's written statement requirements for purchases of travel services. *See* Dkt. # 90 at 11.  That section requires sellers of travel to provide written statements containing six categories of information to customers at or before the time full or partial payment is made. *See* RCW § 19.138.040. As best as this Court can tell, Plaintiff claims that Defendant did not provide "all pertinent information relating to the travel as known by the seller of travel at the time of booking." *Id.* § 19.138.040(4).

Under the CPA, Plaintiff must prove: "(1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to the unfair or deceptive act." *Lyons v. Homecomings Fin. LLC*, 770 F. Supp. 2d 1163, 1167 (W.D. Wash. 2011) (quoting *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1061 (Wash. 1993)).

---

[11] The WSTA defines advertisement as "includ[ing], but [] not limited to, a written or graphic representation in a card, brochure, newspaper, magazine, directory listing, or display, and oral, written, or graphic representations made by radio, television, or cable transmission that relates to travel services." *Id.* § 19.138.021(8).  The Court has some reservations about whether the baggage fee displays even constitute "advertisements" under the WSTA, but will reserve any determination on that issue.

ORDER – 14

Finally, to establish his claim for unjust enrichment, Plaintiff must show three elements: "(1) a plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge or appreciation of the benefit, and (3) the defendant's accepting or retaining the benefit without the payment of its value is inequitable under the circumstances of the case." *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1176 (W.D. Wash. 2014) (citing *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008)).

Plaintiff argues that these claims arise by virtue of Defendant displaying (1) "advertisements" that were incorrect, (2) failing to determine whether the advertised baggage fees were available at the time they were "placed," and (3) failing to maintain written or printed documentation of the steps taken to verify the baggage fees advertised were available at the time the advertisement was placed. *See* Dkt. # 90 at 11. As a result, Plaintiff proposes numerous "common questions" raised by this case. *See* Dkt. # 33 at 12-13; Dkt. # 90 at 12. Most pertinent to the baggage fee class are the questions relating to whether Defendant's system for generating and displaying estimated baggage fees was flawed or whether Defendant knowingly failed to provide accurate baggage fee information.

Defendant argues that the proposed baggage fee class lacks commonality in that answering the proposed common questions do not provide answers for the entire class. *See* Dkt. # 77 at 18. Defendant contends that Plaintiff would have to identify *which* estimated baggage fees were inaccurate, which change depending on an astronomical number of combinations of routes, fare classes, and other variables. *See id.* (citing Dkt. # 81 (Anand Decl.) ¶ 3; Dkt. # 82 (LaFranchi Decl.) ¶¶ 5-6). Defendant further argues that determining whether its baggage fee display system was defective is immaterial as answering that question would not establish liability. *See id.*

Defendant's arguments have merit. Many of Plaintiff's proposed "common questions" raise more questions than they answer.

ORDER – 15

For instance, it is not entirely clear how establishing whether Defendant's baggage fee estimate system was "flawed" – or that Defendant failed to correct inaccurate information after being informed of its flawed process – would drive resolution of this litigation. Even if the system were flawed, Plaintiff would still have to show that the flaw actually caused the Expedia website to display inaccurate baggage fee information and would have to redo that analysis for every possible permutation of flights, fare classes, and other variables Defendant offered. The unfair business practice Plaintiff alleges is not *the baggage fee system*, but the allegedly *misquoted baggage fees*. *See* Compl. ¶ 27.

Likewise, answering the question of whether Defendant "knowingly failed to provide accurate baggage information" fails to generate a common answer. Proving that inaccurate baggage fee estimates were displayed as to *one* carrier, flight, route, and fare class – for example the Virgin Australia SaverLite fare from Sydney, Australia to Christchurch, New Zealand Plaintiff purchased – would do little to answer that same question as to *any other* carrier, flight, route, and fare class that Defendant sold – say, a first class flight from Seattle to Los Angeles on American Airlines. There is little reason to suggest that there is any "glue" tying together the alleged inaccurate estimated baggage fee displays. *See Dukes*, 131 S. Ct. at 2552.

Two "common questions" warrant some mention: (1) whether or not Defendant had a "duty to ensure clear, prominent, and accurate disclosures on its website displays" (*see* Dkt. # 33 at 13; Dkt. # 90 at 12) and (2) whether incorrect baggage fee displays constitute unfair or deceptive practices under the CPA (*see* Dkt. # 90 at 12). Arguably, answering the first question could advance Plaintiff's WSTA claim by resolving whether Defendant's estimated baggage fees constitute "advertisements" under the WSTA. And answering the second question could potentially apply equally across the class. But, in this Court's view, the answers to those questions do not appear to truly advance this litigation in any meaningful way. Significant problems remain as to nearly every other element of those claims, even if those questions are answered.

ORDER – 16

The Court is not entirely satisfied that the commonality element has been satisfied. Nevertheless, the Ninth Circuit does not require that every common question be capable of classwide resolution – rather, so long as a single question exists, this requirement may be satisfied. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) ("Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2).") (quoting *Dukes*, 131 S. Ct. at 2556).  Given this relative liberal treatment of commonality, this Court finds that the requirement is met.

   d.   Are Plaintiff's Claims Typical of the Baggage Fee Class?

Under Rule 23(a)(3), the claims or defenses of the class representatives must be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3).  This requirement is generally satisfied so long as the named plaintiffs' claims are "reasonably coextensive" with those of absent class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  In other words, the question for "typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *See In re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The Court finds that typicality has been met here.  Each of the putative class members suffered similar injuries – allegedly over-paying for baggage fees – arising out of similar conduct – i.e. allegedly incorrect baggage fee estimates.  As Plaintiff's alleged claims arose out of the same alleged course of conduct – inaccurate baggage fee displays stemming from an allegedly "flawed" system – as those of the absent class members, the Court finds that Plaintiff has met the typicality requirement. *See Kavu, Inc. v. Omnipak*

ORDER – 17

*Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (citing *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998)).

Nevertheless, Defendant argues that Plaintiff's claims are atypical because: (1) Plaintiff read baggage fee information on Air New Zealand's website at the time he purchased his flight, meaning he would have been prompted to read the correct baggage fees charged by the marketing carrier; (2) Plaintiff purchased the cheapest fare class and ultimately any amounts he paid on baggage fees was offset by his savings on airfare; and (3) Air New Zealand overcharged Plaintiff for baggage fees on his outbound flight, for which Defendant could not be responsible. *See* Dkt. # 77 at 13.

The Court agrees that typicality may be destroyed where the representative plaintiff is subject to unique defenses that would not apply to the class as a whole. *See Ellis*, 657 F.3d at 984-85; *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 523 (W.D. Wash. 2008). However, the Court finds that the unique defenses in the instant matter are not sufficient to defeat class certification. First, Defendant has not provided any authority to support the proposition that a prompt on Air New Zealand's website directing Plaintiff to read the correct baggage fees charged by Virgin Australia would absolve it of liability – if any – for incorrect baggage fees displayed on the Expedia website or app. Second, Defendant's offset defense likewise is not supported by any authority and, in any event, may be shared by other members of the proposed class.

Defendant's third proposed defense has slightly more merit. Both the WSTA and the CPA require that the plaintiff be "injured by" the defendant's conduct. *See* RCW 19.138.280; *Lyons*, 770 F. Supp. 2d at 1167 (plaintiff's injury must be causally linked to defendant's conduct). In this respect, Air New Zealand's overcharging of Plaintiff potentially could serve as a unique, intervening cause for his injury. Nevertheless, the Court rejects this argument because the injury alleged here is not the extent to which Plaintiff was overcharged, but the fact that he was overcharged as compared to the allegedly incorrect baggage fee display. *See* Dkt. # 88-1 (Bugaighis Decl.) Ex. A

ORDER – 18

[Weidenhamer Depo. Tr.] at 48:6-13.  Ultimately, this injury is shared with the absent members of the class.

e.  Do Common Questions Predominate for the Baggage Fee Class?

In order to certify a class under Rule 23(b)(3), Plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Wang*, 737 F.3d at 545 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)) (internal quotation marks omitted).  The predominance criteria of Rule 23(b)(3) is "far more demanding" than satisfying the commonality requirement set forth by Rule 23(a)(2).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  And courts have a duty to look closely at whether this requirement is satisfied.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 4132 (2013).

Plaintiff argues that individual issues do not predominate because neither proximate causation nor damages serves as a barrier to class certification.  *See* Dkt. # 33 at 20-21.  Defendant contends that individualized issues pertaining to falsity, causation, and damages predominate.  *See* Dkt. # 77 at 14-19.  The Court finds merit to each of the issues Defendant identifies and, accordingly, finds that individual issues predominate over any common issues.

*1.  Individual Issues of Falsity Predominate*

Defendant contends that individual issues of falsity predominate over any issues common to the class.  Specifically, Defendant contends that Plaintiff cannot establish that Defendant systematically displays incorrect baggage fees below those charged by airlines and, correspondingly, must therefore show each individual instance where class members were overcharged.  *See* Dkt. # 77 at 20-21.  This, Defendant avers, would require a cumbersome, file-by-file review of each class member's transaction.  *See id.*

ORDER – 19

1    The Court agrees.  To state a claim under the CPA, Plaintiff must identify an

2    unfair or deceptive act or practice that caused injury to his business or property.  *See*

3    *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash.

4    1986).  The unfair or deceptive act at the core of Plaintiff's baggage fee claims is the

5    *incorrect baggage fee display*, not the *system* for gathering and posting such information.

6    *See* Compl. ¶¶ 21-27; Dkt. # 88-1 (Bugaighis Decl.) Ex. A [Weidenhamer Depo. Tr.]

7    48:6-13.  Given the confluence of carriers, routes, fare classes, and other variables,

8    common sense dictates that Expedia's customers were exposed to varying baggage fee

9    displays.  Many of Defendant's disclosures may have been accurate.  *See* Dkt. # 82

10   (LaFranchi Decl.) ¶ 12.  And while some displays – such as for the tickets Plaintiff

11   purchased – may have been incorrect, the Court would have to review millions of

12   transactions to identify customers that may have been exposed to differing false

13   statements.[12]  Addressing this concern, the comments to Rule 23(b)(3) note that

14   "although having some common core, a fraud case may be unsuited for treatment as a

15   class action if there was material variation in the representations made or in the kinds or

16   degrees of reliance by the persons to whom they were addressed."  *See* Fed. R. Civ. P.

17   23(b)(3) advisory committee's note to 1966 amendment.  Addressing material variations

18   in the baggage fees displayed to different sets of customers likely creates an

19   "individualized inquiry [] incompatible with a class action."  *Boucher*, 2012 WL 3023316

20   at *8.

### 2.  Individual Issues of Causation Predominate

21   Both the WSTA and the CPA require that the plaintiff show that the defendant's

22   conduct caused her injury.  *See* RCW 19.138.280; *Lyons*, 770 F. Supp. 2d at 1167.  And

23   other courts in this district have suggested that there is a causation-like inquiry for certain

24

---

[12] Different airlines have varying baggage fees, meaning that even customers exposed to
incorrect baggage fees on the Expedia website or app would necessarily have been exposed to
different false statements.  For example, incorrect baggage fee displays for Alaska Airlines
flights would likely be different for flights on Virgin Australia.  *See* Dkt. # 82 (LaFranchi Decl.)
¶ 2.

ORDER – 20

kinds of unjust enrichment claims. *See Kelley*, 251 F.R.D. at 559 ("Plaintiffs argue that unjust enrichment does not require proof of causation and that unjust enrichment is more amenable to common proof because the focus is on the gain to Microsoft rather than the loss to any individual plaintiff. That may be the case, but the trier of fact must still consider whether and how an injustice occurred."); *cf. In re Phenylpropanolamine (PPA) Products Liab. Litig.,* 214 F.R.D. 614, 620 n.8 (W.D. Wash. 2003) ("the breach of warranty and unjust enrichment claims could require individualized factual inquiries into issues such as causation, materiality, notice, and/or breach.").

Plaintiff argues individual issues of causation will not predominate because the WSTA provides for statutory damages for violations. *See* Dkt. # 90 at 11. He contends that statutory damages "dispense with causation and impose a penalty solely for failure to comply with disclosure requirements." Dkt. # 33 at 20. Plaintiff is incorrect – he must prove causation.

The WSTA does not provide for statutory damages.[13] Only one provision in the WSTA grants a private right of action. That section states only that "[i]n addition to any other penalties or remedies provided ***under chapter 19.86 RCW*** [the CPA], a person who is injured by a violation of this chapter may bring an action for ***recovery of actual damages***, including court costs and attorneys' fees." RCW § 19.138.280 (emphasis added). In other words, the plain text of the WSTA's private right of action *only* allows for recovery of *actual damages* along with costs and attorneys' fees.

Plaintiff insists that the WSTA *does* provide for statutory damages and cites to RCW § 19.138.240(1). *See* Dkt. # 33 at 19-20; Dkt. # 90 at 11. That section states that "[a] civil penalty shall be imposed by the court for each violation of this chapter in an amount not less than five hundred dollars nor more than two thousand dollars per

---

[13] Contrary to Plaintiff's counsel's assertions at the hearing, this issue plainly is before the Court because Plaintiff argued it in his motion papers. *See* Dkt. # 33 at 19 & 26; Dkt. # 90 at 10. Whether statutory damages are available under the WSTA plainly must be determined if Plaintiff is to rely upon that argument to bypass an individualized inquiry into causation.

ORDER – 21

violation." However, that section may only be enforced by the state of Washington. The very next paragraph in that section clarifies this point by providing "[i]f a person fails to pay an assessment after it has become a final and unappealable order, or after the court has entered final judgment *in favor of the state*, the *director*[14] may recover the amount assessed by action in the appropriate superior court." RCW § 19.138.240(2) (emphasis added). Plaintiff therefore may not rely upon the availability of statutory damages to satisfy the WSTA's causation requirement.

Plaintiff's CPA and unjust enrichment claims are premised on affirmative misrepresentations – i.e., deceptive advertising. Other courts in this district have cautioned that deceptive advertising theories of consumer fraud "require the trier of fact [] to determine whether individual class members were actually deceived and whether they would have purchased" the product but for the allegedly false advertising. *See Kelley*, 251 F.R.D. at 558; *see also Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493 RSM, 2014 WL 3694231, at *12 (W.D. Wash. July 23, 2014). Consequently, a deception based theory of causation would likely cause individualized issues to predominate over any common class issues. This may be because not every customer saw the alleged misrepresentations, a fact particularly at issue here because customers must affirmatively elect to view Expedia's baggage fee displays. *See* Dkt. # 88 (LaFranchi Decl.) ¶¶ 9-10. Customers who never saw the advertisements could not have relied upon any alleged misrepresentations contained therein, which would defeat any presumption of reliance and correspondingly defeat class certification. *Cf. Mazza*, 666 F.3d at 596 (holding that no presumption of reliance applied because "it is likely that many class members were never exposed to the allegedly misleading advertisements"); *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 536-37 (S.D. Cal. 2011) (denying class certification where "the proposed class members may have seen some, all or none of

---

[14] The WSTA defines "director" as "the *director of licensing* or the director's designee," further emphasizing that these civil penalties are not statutory damages. RCW § 19.138.021(2) (emphasis added).

ORDER – 22

these statements prior to the purchase").  Even if potential class members had seen the estimated baggage fee displays, individualized inquiries regarding whether they had actually been deceived or whether those displays caused their injuries are likely to predominate, given that not every class member could possibly have seen an identical misrepresentation.  *See Kelley*, 251 F.R.D. at 558; *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (presumption of reliance did not apply where class members "were exposed to quite disparate information from various representatives of the defendant").  This is certainly the case here, where Defendant sold airplane tickets on numerous carriers, routes, and fare classes, each with differing potential baggage fee rules.  *See* Dkt. # 81 (Anand Decl.) ¶¶ 2, 7-8; Dkt. # 82 (LaFranchi Decl.) ¶ 2, 5.  Common sense would dictate that different customers purchasing fares on different airlines would be exposed to different misrepresentations.

Plaintiff argues, however, that he need not show causation for his CPA claim because the "case implicates a material omission" rather than a material misrepresentation.  *See* Dkt. # 33 at 20.  Plaintiff is correct in principle, but incorrect in application.  It is true that "[w]hile the Washington Supreme Court has never affirmed a presumption of reliance in consumer fraud cases involving material omissions, it has acknowledged that reliance is 'virtually impossible to prove' in cases involving nondisclosure of material facts."  *Blough*, 2014 WL 3694231 at *13 (citing *Morris v. Int'l Yogurt Co.*, 729 P.2d 33, 41 (Wash. 1986)); *see also Schnall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 138 (Wash. 2011).  Thus, if Plaintiff's theory of causation via omissions held water, then potentially individual issues would not predominate as he could rely upon a quasi-presumption of reliance.

But Plaintiff's effort to recast his claims as premised on omissions is unavailing.  For one, Plaintiff's claims clearly are premised on allegations of affirmative misstatements regarding estimated baggage fees.  *See* Compl. ¶¶21-27 ("Upon arrival with his family at the airport, Plaintiff learned that, *contrary to Defendant's*

ORDER – 23

*representation that there was no additional fee…*").  The omissions Plaintiff now claims[15] – none of which are contained in the operative complaint – are not the actionable misrepresentations Plaintiff focuses on.  Instead, it is the *incorrect baggage fee display* that his claim arises out of.  Plaintiff's own deposition testimony underscores this as he testified that he purchased tickets on the Expedia app "on the understanding that there was no fee for the first checked bag."  *See* Dkt. # 88-1 (Bugaighis Decl.) Ex. A [Weidenhamer Depo. Tr.] at 48:6-8.  When he discovered that the ticket was actually for "a seat-only fare" and that he had to pay for the first checked bag, he "considered that to be a *false representation of the total cost of the fare*."  *See id.* at 48:8-13 (emphasis added).

Even taking Plaintiff's arguments at face value, however, at best Plaintiff's claims rely on a mixture of affirmative misrepresentations *and* omissions.  The presumption of reliance does not apply in these situations.  *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666-67, 672 (9th Cir. 2004) (in civil RICO action finding that presumption of reliance did not apply where fraud claims were based on both affirmative misrepresentations and omissions and affirming denial of class certification); *Blough*, 2014 WL 3694231 at *13; *see also Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (holding, in context of Rule 10b-5 securities fraud cases, that presumption of reliance applies only where case primarily involves "a failure to disclose").  Accordingly, the Court finds that individual issues of reliance – and therefore proximate cause – predominate.

### 3.  Class-wide Injury and Damages Concerns

Finally, Defendant argues that Plaintiff has no method of proving class-wide injury and that even if he did, Plaintiff has proposed no reliable method of determining such damages.  *See* Dkt. # 77 at 17-19.  Plaintiff argues that this issue is irrelevant

---

[15] Plaintiff argues that Defendant omitted certain information pertaining to alleged flaws in its baggage fee system.  *See* Dkt. # 33 at 20.

ORDER – 24

because the WSTA provides for statutory damages and because individualized issues of damages do not defeat class certification. *See* Dkt. # 33 at 21. Plaintiff also argues that he need not show monetary damages, only "injury," under the CPA. *See* Dkt. # 90 at 12. The Court addresses Plaintiff's arguments in turn.

First, the WSTA does not provide for statutory damages, only for recovery of actual damages, costs, and attorneys' fees. *See* RCW § 19.138.280. Second, although Plaintiff correctly notes that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)" (*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)), these issues may still be "a factor in the predominance analysis" in cases "where damages calculations are not a matter of straightforward accounting" (*In re Facebook, Inc. PPC Advert. Litig.*, 282 F.R.D. 446, 459 (N.D. Cal. 2012) (citing *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)) (finding that common issues did not predominate in part because of the difficulty in determining injury on a class-wide basis)).

Plaintiff proposes that "[t]o the extent the Class must prove actual damages, they can be assessed through evidence of payments." *See* Dkt. # 33 at 21. But that proposal gives this Court no "evidentiary foundation . . . to establish the feasibility and fairness of damages assessments," particularly as Defendant has provided several *prima facie* reasons why damages calculations may be complex. *Lilly*, 308 F.R.D. at 244. For one, merely ascertaining the size and scope of the *class* – much less the amount of Defendant's potential liability – is a monumental, if not impossible, task. Compounding these difficulties is the fact that putative class members who were reimbursed by their employer or had someone else pay their baggage fees may have suffered no injury. *See* Dkt. # 81 (Anand Decl.) ¶ 11, Ex. B (survey of North American company travel departments revealed that 91% of the participating companies reimburse employee bag fees); *see also McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 610 (S.D.

ORDER – 25

Cal. 2007) (excluding from class individuals who received a full refund and who therefore did not suffer a similar injury).

Plaintiff's contention that he need only show "injury," not damages, while true in the abstract (*see Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899-900 (Wash. 2009)), does not provide this Court with any baseline for evaluating or establishing that injury. And courts have held that even though "the injury involved need not be great, it must be established." *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012) (quoting *Hangman Ridge*, 719 P.2d at 539) (dismissing plaintiff's class action CPA claim where she failed to provide sufficient facts demonstrating that she and other members of the purported class sustained injury).

As such, the Court finds that Plaintiff's failure to present a model or other method of evaluating class-wide injury weighs against a finding that common issues predominate.

    f.   Is a Class Action Superior To Other Available Methods?

Finally, in order to certify a class under Rule 23(b)(3), Plaintiff must establish that a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Oftentimes, in order to assess superiority, the Plaintiff must present a "suitable and realistic plan for trial of the class claims." *See Zinser*, 253 F.3d at 1189 (9th Cir. 2001) (quoting *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J. 1998)); *see also Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 614 (W.D. Wash. 2001) (finding that plaintiff failed to meet her burden of showing a suitable and realistic plan where case involved state law variations in treatment of negligence claims).

Plaintiff has not provided such a plan here. Instead, Plaintiff simply avers – both in his papers and at oral argument – that Defendant "disingenuously argues that it should be allowed to deal with problems on its own." Dkt. # 90 at 12. Defendant certainly is not encouraging this Court to certify the baggage fee class, but Plaintiff ignores that burden is

ORDER – 26

1   on *him* to show that his claim meets the requirements of Rule 23, not on Defendant to

2   show that class certification is improper.  *See Berger*, 741 F.3d at 1067 (citing *Dukes*,

3   131 S. Ct. at 2551).  And, contrary to Plaintiff's argument, Defendant does not solely

4   argue that "adjudication" is improper – Defendant plainly concedes that both "the CPA

5   and WSTA allow attorney fee awards, negating any deterrent for litigating meritorious

6   claims."  Dkt. # 77 at 20.

7            But more to the point, the question is not whether Defendant's motives are

8   disingenuous, but rather whether Plaintiff can show that a class action is superior.

9   Plaintiff has not done so here, but instead continuously attempts to shift the burden onto

10  Defendant to show why individual determination by Expedia is appropriate.  That is not

11  the standard.  The burden is on *Plaintiff* to show that a class action is a superior method

12  for adjudicating the action.  *See Etzelsberger v. Fisker Automotive, Inc.*, 300 F.R.D. 378,

13  382 (S.D. Cal. 2013) (citing *Zinser*, 253 F.3d at 1186).  Plaintiff has not met that burden,

14  given the monumental manageability issues presented by the proposed class, and his

15  failure to explain how to meaningfully take this case to an eventual conclusion.

16           In any event, at this juncture, because the Court has already found that common

17  issues do not predominate for Plaintiff's baggage fee claims, the Court does not need to

18  address class superiority issues.  *See In re Grand Theft Auto Video Game Consumer*

19  *Litig.*, 251 F.R.D. 139, 161 n.26 (S.D.N.Y. 2008).

20           g.   Is the Baggage Fee Class Certifiable Under Rule 23(b)(2)?

21           In the alternative, Plaintiff urges the Court to certify the baggage fee class under

22  Rule 23(b)(2) in connection with his request for injunctive relief.  *See* Dkt. # 33 at 22.

23  Specifically, Plaintiff wishes to certify a class to seek "injunctive relief forcing Expedia

24  to remediate its flawed baggage fee display and disclosure system."  *See* Dkt. # 90 at 16.

25  Plaintiff contends that the class is sufficiently "cohesive" to merit certification.

26           Certification under Rule 23(b)(2) is appropriate when a defendant "has acted or

27  refused to act on grounds that apply generally to the class, so that final injunctive relief or

28  ORDER – 27

corresponding declaratory relief is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2).  The Ninth Circuit has clarified that "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195 (citing *Nelsen v. King Cnty.*, 895 F.2d 1248, 1254-55 (9th Cir. 1990)); *Ellis*, 657 F.3d at 986.  "The principle undergirding this requirement is that the 'indivisible nature of the injunctive or declaratory remedy' justifies certification because the 'conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 484 (S.D. Cal. 2013) (quoting *Dukes*, 131 S. Ct. at 2557).  In other words, Rule 23(b)(2) does not authorize certification where "each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 131 S. Ct. at 2557.

The question here is whether "a single injunction or declaratory judgment would provide relief to each member of the class."  *Wang*, 737 F.3d at 544 (quoting *Dukes*, 131 S. Ct. at 2557).  Plaintiff argues that the problems he and other putative class members have encountered are "uniform" and have not yet been resolved.  *See* Dkt. # 90 at 16.  Moreover, Plaintiff attributes these issues to a commonly flawed system.  *Id.*  However, in the Court's view, especially in light of its findings on the predominance of individual issues, a single injunction will not provide relief to every member of the class.  Any injunction requiring Defendant to fix any allegedly broken baggage fee system would still require individualized relief – the injunction would have to be retailored anytime a flawed display was found.  Accordingly, the Court finds that the baggage fee class is not fit for certification under Rule 23(b)(2).

     h.  <u>The Court Declines To Certify The Baggage Fee Class</u>

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Certify Class as to the baggage fee class.  The Court declines to certify the baggage fee class under either Rule 23(b)(3) or 23(b)(2).

ORDER – 28

1  **C.  The MOBILEGO Class**

2      a.  Is the MOBILEGO Class Ascertainable?

3      Plaintiff's proposed MOBILEGO class seeks to represent a class of "[a]ll persons

4  in the United States . . . who downloaded the Expedia App and purchased airfares using it

5  but did not receive Expedia's promised 5% discount."[16]  Dkt. # 33 at 10.  Defendant

6  contends that the MOBILEGO class is not ascertainable because it is a failsafe class and

7  because there is no administratively feasible means of identifying these customers.  *See*

8  Dkt. # 77 at 21-22.

9          *i.  Is the MOBILEGO Class a Failsafe Class?*

10      "Fail-safe classes are defined by the merits of their legal claims, and are therefore

11  unascertainable prior to a finding of liability in the plaintiffs' favor."  *In re ConAgra*

12  *Foods, Inc.*, 302 F.R.D. at 567 n.102 (quoting *Velasquez v. HSBC Fin. Corp.*, No. 08–

13  4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009)).  Such classes are ordinarily

14  impermissible.  *See Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152 n.101 (N.D.

15  Cal. 2015); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (proposed

16  classes of individuals who purchased products defendant "falsely advertised" were

17  deemed failsafe classes).

18      It is not entirely clear how the MOBILEGO class is impermissibly failsafe, though

19  Defendant appears to take issue with the word "promised" in the class definition.

20  Certainly, the class is not defined in the best possible manner, but its definition does not

21  necessarily presuppose liability.  Members of the MOBILEGO class either received or

22  did not receive a 5% discount on their flight purchase after applying the coupon code.

23  That alone is not tied up with their claims – the key for determining liability is whether

24  the offer displayed to the putative class members was deceptive or had the possibility of

25

---

26  [16] Based on Plaintiff's counsel's representations, the MOBILEGO class is limited to the period
    from July 11, 2010 to September 17, 2014, though the MOBILEGO coupon on the shunt page
27  apparently was only displayed for a fraction of that period.  *See* Dkt. # 84 (Onstot Decl.) ¶ 3.

28  ORDER – 29

1   being deceptive, not whether the discount was "promised."  As such, the Court finds that

2   the MOBILEGO class is not failsafe.

3          *ii.   Is it Administratively Feasible to Ascertain the MOBILEGO Class?*

4          Defendant next argues that members of the MOBILEGO class cannot be

5   ascertained because Defendant has no ability to identify customers who read the discount

6   code on the shunt page[17] and subsequently made a flight purchase through the Expedia

7   app.  Defendant explains that although it has certain information showing that roughly

8   14,700 devices downloaded the Expedia app from the shunt page between January 1,

9   2014 and July 17, 2014, it is has no means to tie these specific devices to flight

10   purchases.  *See* Dkt. # 77 at 27-28; *see also* Dkt. # 86 (Li Decl.) ¶¶ 7-9.  Neither party

11   disputes that members of the MOBILEGO class may be identified by objective criteria.

12   Whether any individual purchased a flight on the Expedia App after viewing the

13   MOBILEGO coupon on the shunt page is an objective criterion.  However, the Court

14   finds that there is no administratively feasible means of identifying MOBILEGO class

15   members.  *See Kosta*, 308 F.R.D. at 227.

16          Plaintiff argues that class members can be ascertained by reference to Defendant's

17   records of flight purchases, unique device identification numbers for app purchases, and

18   through individual customer affidavits.  *See* Dkt. # 90 at 7.

19          Contrary to Plaintiff's assertions, however, the evidence presented does not show

20   that individuals or devices[18] that downloaded the Expedia app from the shunt page can be

21   identified in a manner sufficient to support class certification.  Apparently, Expedia uses

22   two third-party vendors to track customer behavior.  *See* Dkt. # 85 (Li Decl.) ¶ 2.  Data

23

---

24   [17] When the Expedia website is inaccessible to a customer, a "shunt" page is displayed.  *See* Dkt.
25   # 84 (Onstot Decl.) ¶ 2.  The shunt page displayed the MOBILEGO coupon code from roughly
     July 2013 to July 2014.  *See id.* ¶ 3.

26   [18] The Court is mindful of Defendant's inability to identify customers who downloaded the
27   Expedia app on Android devices, which weighs against ascertainability.  However, because those
     users comprise a substantial minority of Expedia app users (Dkt. # 86 (Li Decl.) ¶ 6), the Court
     finds this insufficient in and of itself to render the class unascertainable.

28   ORDER – 30

from those two vendors is not compatible for flight bookings. *See id.* ¶ 3. And, in fact, this marketing data is not intended to identify customers. *See id.* ¶ 7. Ultimately, all this discussion makes much ado about nothing. Regardless of what vendor Expedia used to track the use of any code, it seems clear to this Court – and Plaintiff has not provided any evidence indicating otherwise – that a coupon which would not apply to a given purchase would not leave any trace of its use (or misuse, as it were).

This leaves proof by affidavit as Plaintiff's last gambit. "Proof by affidavit does not necessarily defeat ascertainability," though it may present significant difficulties. *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *9 (N.D. Cal. Nov. 18, 2014). Rather than inherently being problematic, the use of consumer affidavits is problematic chiefly when plaintiffs seek to rely upon "[a]ffidavits from consumers alone" to identify class members. *In re Clorox Consumer Litig.*, 301 F.R.D. at 440. Plaintiff does not propose to rely on consumer affidavits alone here, but neither does he propose any true alternative. Customers and Expedia may have records of their Expedia purchase, and they may swear under penalty of perjury that they attempted to apply the MOBILEGO coupon, but the Court is unconvinced that that is enough to sufficiently ascertain class members. The lack of a truly objective "check" on whether, when, and how individuals used the MOBILEGO coupon raises the specter of the same "subjective memory problem" found fatal to affidavit-based methods for ascertaining a class. *See Xavier*, 787 F. Supp. 2d at 1090; *see also Perrine v. Sega of Am., Inc.*, No. 13-CV-01962-JD, 2015 WL 2227846, at *3 (N.D. Cal. May 12, 2015). Nothing Plaintiff submits to this Court suggests otherwise.

This "subjective memory problem" is also potentially present here, where Expedia ran at least two versions of the MOBILEGO coupon instructions,[19] meaning that

---

[19] The Court notes that these instructions apparently were not on or even referenced on the "shunt page" displaying the MOBILEGO coupon. *See* Dkt. # 84 (Onstot Decl.) ¶ 5. In other words, it is unclear what proportion of the purported class even was exposed to this second layer of instructions.

ORDER – 31

individuals would also have to remember which set of instructions (if any) they viewed. *See* Dkt. # 84 (Onstot Decl.) ¶ 5, Ex. B.  In fact, during a portion of the period Expedia ran the MOBILEGO promotion, "Expedia ran a test splitting traffic between" an older version of the coupon instructions and a newer version, without instructions. *Id.* ¶ 5.  As other courts have held, a class may be unascertainable where potential class members are exposed to differing labels, warnings, or other messages.  *See Kosta*, 308 F.R.D. at 228-29; *In re Clorox Consumer Litig.*, 301 F.R.D. at 449; *Jones*, 2014 WL 272726 at *2-3; *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *9 (N.D. Cal. June 23, 2014); *but see Patel v. Trans Union, LLC*, 308 F.R.D. 292, 302-03 (N.D. Cal. 2015).

Of course, the Court's concerns regarding the ascertainability of the MOBILEGO class do not *ipso facto* render the class uncertifiable.  *See Algarin*, 300 F.R.D. at 457. Accordingly, the Court will consider the other class certification requirements.

b.  <u>Is the Proposed MOBILEGO Class Sufficiently Numerous?</u>

Next, Defendant contends that the MOBILEGO class is not sufficiently numerous as Plaintiff fails to identify how many class members exist.  *See* Dkt. # 77 at 22. Defendant's argument is rather puzzling, given that it admits that it is likely that roughly 53 Expedia app downloads from the shunt page between January 1, 2014 and July 17, 2014 may have resulted in flight purchases.  *See id.* at 22; Dkt. # 86 (Li Decl.) ¶ 10.  And as this Court has previously noted, classes of just 40 members are generally sufficiently numerous.  *See Keegan*, 284 F.R.D. at 522.  As such, the Court finds that the MOBILEGO class is sufficiently numerous.

c.  <u>Is Plaintiff Typical Of the MOBILEGO Class?</u>

Defendant argues that Plaintiff is not typical of the MOBILEGO class because he is subject to unique defenses.  *See* Dkt. # 77 at 28-29.  Unique defenses may be sufficient to destroy typicality and, consequently, defeat class certification.  *See Ellis*, 657 F.3d at 984-85.  Defendant raises the following defenses: (1) Plaintiff received a refund, (2)

ORDER – 32

Plaintiff tried multiple times to complete his flight purchase prior to seeing the shunt page, (3) Plaintiff did not read the terms and conditions pertaining to the MOBILEGO code, (4) Plaintiff thought the MOBILEGO discount applied retroactively, and (5) Plaintiff did not see notifications that he could cancel his flight purchase without penalty within 24 hours.  *See* Dkt. # 77 at 28-30.  As such, Defendant argues that Plaintiff's claim is atypical because he is subject to unique defenses "such as payment, nonreliance, assumption of risk, and waiver."  *Id.* at 30.

Plaintiff, for whatever reason, does not seriously counter Defendant's argument. *See* Dkt. # 90 at 9-11 (discussing only the baggage fee class).  In fact, Plaintiff's cited case, *Wolin v. Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) specifically found that the defendant had "identified no defenses that are unique to [plaintiffs] that would make class certification inappropriate."  Of course, the question is not simply whether Plaintiff will be subject to unique defenses, but whether "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Defendant argues that Plaintiff is atypical for several reasons.  First, Defendant argues that Plaintiff received a refund (*see* Dkt. # 77 at 28), a fact that Plaintiff himself alleges (*see* Compl. ¶ 36).  That fact may suggest that Defendant is not subject to quite the same incentives to litigate his MOBILEGO claims, but is likely not enough to destroy typicality.  *See Wolin*, 617 F.3d at 1175 (citing *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010)); *see also In re Scott EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015); *but see Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 557 (C.D. Cal. 2012) (finding that typicality was endangered where plaintiff sought relief different from those of other class members) (quoting *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007).

ORDER – 33

Three of Defendant's other arguments merit additional attention: (1) that Plaintiff has already admitted that he would have purchased his ticket without the MOBILEGO coupon, (2) Plaintiff's concession that he did not read the applicable MOBILEGO coupon terms and conditions, and (3) Plaintiff's apparent belief that the MOBILEGO coupon applied retroactively.  *See* Dkt. # 76 at 28-29.

A plaintiff's exposure to a non-reliance or unreasonable reliance defense may be fatal to her claim.  *See Mazur*, 257 F.R.D. at 568-69 (holding that named plaintiff's unreasonable reliance would render her atypical of the class); *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 346-47 (D. Ariz. 2009) (discussing named plaintiff's non-reliance).  These defenses are present here.  Plaintiff admits that he did not rely upon any representation in the MOBILEGO coupon in making his initial flight purchase or for choosing Expedia to make that purchase.  *See* Dkt. # 79-1 (Bugaighis Decl.) Ex. A [Weidenhamer Depo. Tr.] at 48:14-25, 93:21-94:3, 107:4-108:5 (explaining that Plaintiff tried to purchase flight tickets multiple times on his laptop before being presented with the shunt page).  Plaintiff admits that he did not read the applicable terms and conditions of the MOBILEGO coupon.  *See id.* at 165:22-166:19 ("So obviously I should have read the terms and conditions here").  Plaintiff's failure is potentially fatal to his claim for lack of reliance.  *See Withers v. eHarmony, Inc.*, No. CV 09-2266-GHK RCX, 2011 WL 8156007, at *3 (C.D. Cal. Mar. 4, 2011) (failure to read applicable terms and conditions may defeat reliance elements of similar California unfair competition statutes); *cf. Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) (finding that plaintiff's fraud claim failed because he did not read terms and conditions before assenting to them).

Additionally, credibility concerns may render a named plaintiff atypical if those issues threaten to preoccupy the litigation.  *See Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 633 (W.D. Wash. 2011) (citing *Drake v. Morgan Stanley & Co.*, No. CV 09-6467 ODW (RCx), 2010 WL 2175819, at * 5 (C.D. Cal. Apr. 30, 2010)).  The Court is somewhat concerned about Plaintiff's credibility given that although he testified he read

ORDER – 34

and followed the MOBILEGO coupon steps[20] "exactly," he apparently skipped a step requiring a user to "find a hotel."  *See* Dkt. # 79-1 (Bugaighis Decl.) Ex. A [Weidenhamer Depo. Tr.] at 168:9-17, 168:21-169:13.  This problem is further highlighted by Plaintiff's apparent belief that he was to enter the MOBILEGO coupon code after completing his purchase (*see id.* at 169:15-18) when he also testified that he was familiar with similar coupons and that such coupons were applied at the point of sale (*see id.* at 32:3-8).

Defendant has raised serious questions about whether Plaintiff is a typical class member, given the extent to which he may be subject to unique defenses.  Consequently, the Court finds that Plaintiff is not typical of the MOBILEGO class.

        d.  <u>Are There Questions of Law And Fact Common to the MOBILEGO Class that Predominate?</u>

The final question is whether common questions of law and fact exist for all class members and whether they predominate over individual questions.  Plaintiff argues that several common questions exist for the class, including whether the shunt page prominently disclosed that the MOBILEGO discount would not apply to air travel only purchases and whether disclaimers were sufficient to look elsewhere for more accurate information.  *See* Dkt. # 33 at 12-13; Dkt. # 90 at 12.

Defendant argues that individual issues of causation predominate in this situation. Because the representations here were affirmative representations, Defendant argues, individual questions of reliance necessarily apply and predominate.  *See* Dkt. # 77 at 30.

To some extent, the Court agrees with Defendant that Plaintiff must show individual reliance when proceeding on a theory of deception through affirmative misrepresentations, as he appears to do here.  *See Kelley*, 251 F.R.D. at 557.  Individual issues of reliance are likely to be overriding in these situations.  The Court notes that in

---

[20] Also relevant to the Court's typicality analysis is the fact that Plaintiff apparently read and relied on the MOBILEGO instructions themselves, which were on a page separate and apart from the shunt page.  *See* Dkt. # 84 (Onstot Decl.) ¶ 5.  The extent to which other members of the purported MOBILEGO class even saw the instructions Plaintiff extensively relied upon is up for debate.

ORDER – 35

the context of a substantially identical representation displayed to every MOBILEGO class member through Defendant's shunt page, however, the problems associated with proving reliance may be somewhat relaxed.  *See Blough*, 2014 WL 3694231 at *12 (citing *Wolin*, 617 F.3d at 1168); *cf. Mazza*, 666 F.3d at 596 (presumption of reliance does not apply when customers exposed to disparate information from different sources).

Still, although the Court finds that the MOBILEGO class should not be certified at this time for numerous other reasons outlined above, the Court is not entirely convinced that individual issues – particularly as related to causation – categorically predominate. This is not a situation where each class member must prove the falsity of *different* representations, as in the case of the baggage fee class, but rather must prove the misleading nature of a *substantially identical* representation.

Whatever the answer may be, the Court declines to address this issue at this time.

e.  The Court Declines to Certify the MOBILEGO Class

For the foregoing reasons, the Court declines to certify the MOBILEGO class under Rule 23(b)(3) and **DENIES** Plaintiff's Motion as to that class.

///

///

///

ORDER – 36

## VI.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Class Certification.  The Court's denial of Plaintiff's Motion is **without prejudice**.  If Plaintiff intends to again seek class certification, he is **HEREBY ORDERED** to meet and confer with Defendant to prepare a joint statement proposing a briefing schedule for Plaintiff's second motion to certify class.  This joint statement should be filed with the Court **no later than ten (10) days of the date of this Order** and be **no more than five (5) pages**. The Court expects that the Parties' joint statement will address the following issues: (1) whether Plaintiff intends to again seek class certification, (2) if so, the necessity and extent of any additional class discovery, and (3) proposing a reasonable briefing schedule for any second motion for class certification.  The Court will issue an Order on those issues shortly after receiving the joint statement.

DATED this 13th day of November, 2015.

_Richard A Jones_
_____

The Honorable Richard A. Jones
United States District Court

ORDER – 37