HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY D. WEIDENHAMER,

    Plaintiff,

  v.

EXPEDIA, INC.,

    Defendant.

CASE NO. C14-1239RAJ

ORDER

## I. INTRODUCTION

This matter comes before this Court on Plaintiff Jeffrey D. Weidenhamer's ("Plaintiff") and Defendant Expedia, Inc.'s ("Defendant" or "Expedia") LCR 37 Joint Submission. The Court declines to elaborate on the facts in this case as they are detailed in this Court's previous Orders.[1]

## II. LEGAL STANDARD

The Court has broad discretion to control discovery. *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011). That discretion is guided by several principles. Most importantly, the scope of discovery is broad. A party must

---

[1] A Motion to Seal has been filed in conjunction with this submission. Dkt. # 96. A "good cause" standard applies to motions to seal discovery documents attached to non-dispositive motions. *See In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). The documents sought to be sealed are Defendant's competitively sensitive business information relating to its various baggage fee systems. *See* Dkt. # 95 Ex. A & B. The Court finds that good cause exists to seal this information and **GRANTS** the Motion to Seal. *See Apple Inc. v. Samsung Elec. Co.*, 727 F.3d 1214, 1224 (Fed. Cir. 2013) (applying Ninth Circuit law).

ORDER – 1

respond to any discovery request that is not privileged and that is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Court, however, must limit discovery where it can be obtained from some other source that is more convenient, less burdensome, or less expensive, or where its "burden or expense . . . outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving these issues." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

### III.   ANALYSIS

The Parties dispute Defendant's responses to four of Plaintiff's discovery requests, specifically:

Plaintiff's First Set of Request for Production of Documents:

**Document Request No. 21:**
Policies or Procedures Concerning Your disclosure of baggage fees.

Dkt. # 91 Ex. A at 33.

Plaintiff's Second Set of Requests for Production of Documents:

**Document Request No. 23:**
Copies of all Expedia customer complaints, comments, or criticisms Concerning Expedia's baggage fee disclosures.

**Document Request No. 26:**
Documents showing any errors in baggage fee disclosures that Expedia has identified.

Dkt. # 91 Ex. B at 37, 39.

Plaintiff's Second Set of Interrogatories:
**Interrogatory No. 10:**
Identify all other airline baggage fee disclosures that You have determined incorrectly stated the amount of the baggage fee or that Expedia had "no information" for such fee when it in fact did.

Dkt. # 91 Ex. C at 48.

Plaintiff now argues that Defendant has levied improper objections to these requests. Those objections fall into three general categories: (1) Defendant has limited its search for documents to only its U.S. points of sale, (2) Expedia has redacted personal

ORDER – 2

identifying information ("PII") of passengers or customers from customer complaints, and (3) Defendant has limited its searches to only Virgin Australia SaverLite fares. *See* Dkt. # 91 at 4-6. In addition to these topics, Defendant raises two of its own: (1) Plaintiff's Motion is untimely, and (2) the Complaint's class definition inherently imposes a July 2012 limitation. *See* Dkt. # 91 at 8, 16-17.[2]

      a. <u>Whether this Motion Is Timely</u>

The Parties first dispute whether Plaintiff timely filed this Motion. The class discovery deadline in this case was originally set for February 27, 2015. *See* Dkt. # 16. Subsequently, Plaintiff moved for an extension of the class certification deadline (*see* Dkt. # 19), which this Court denied (Dkt. # 27), though the Court also ordered Defendant to prepare additional responses to Plaintiff's class discovery (Dkt. # 27). The class discovery deadline was never altered.

Defendant argues that Plaintiff did not raise any of the issues raised in the Motion until 60 days after Defendant first served its Responses and over two weeks after Plaintiff filed his Motion for Class Certification. *See* Dkt. # 91 at 8-9 (citing Dkt. # 94 (Bugaighis Decl.) ¶ 3). Defendant contends that it has continued to produce responsive documents in four productions from March 13, 2015 through April 10, 2015 despite the fact that it is long past the discovery deadline. *See id.* at 8; *see also* Dkt. # 94 (Bugaighis Decl.) ¶ 6. Defendant argues that it has raised its objection concerning the U.S. point of sale since the outset of discovery and that Plaintiff has not provided any reason for the delay or for why he needs this additional discovery. *See id.* at 9.

The Court is concerned with Plaintiff's delay. Defendant has maintained its objection to producing documents relating to its business activities outside the United

---

[2] Before engaging in the substance of the submission, the Court notes that Defendant has filed a surreply seeking to strike the Declaration of Scott Poynter. *See* Dkt. # 100-102. The Court does not rely upon Mr. Poynter's declaration or its attached exhibits and therefore declines to rule. Nevertheless, the Court cautions the Parties that any new evidence or argument for which a non-moving party is not given the opportunity to respond will ordinarily be stricken. *See Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003) (citing *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)).

ORDER – 3

States since at least January 27, 2015. *See* Dkt. # 24 (Bugaighis Decl.) Ex. A at 5; *see also* Dkt. # 94 (Bugaighis Decl.) ¶ 2. And the evidence suggests that Plaintiff did not raise these issues until May 1, 2015, long after Defendant's production and after the discovery deadline. *See* Dkt. # 94 (Bugaighis Decl.) ¶¶ 2-3. Motions to compel may be denied for lack of timeliness (*see Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1118-19 (W.D. Wash. 2004)), but the Court declines to do so here, given that part of the reason discovery has been drawn out in this litigation was the Court's order on Plaintiff's previous motion to compel (Dkt. # 27). Suffice it to say that going forward in this litigation, this Court fully expects the Parties to comply with all applicable deadlines,[3] which this Court will vigorously enforce. Moreover, the Court reminds the Parties that the Local Rules of this Court specifically state that written discovery "must be served sufficiently early that all responses are due ***before*** the discovery deadline" and "[a]ny motion to compel discovery shall also be filed and served ***on or before this deadline*** or as directed by court order." Local Rules W.D. Wash. LCR 16(b)(2) (emphasis added).

  b. <u>Whether Defendant Properly Limited Its Search to July 2012</u>

Although not specifically raised by Plaintiff, it appears that he objects to Defendant's limitation of its documents to the time period July 1, 2012 to July 11, 2014. *See* Dkt. # 91 at 17-18. The crux of Plaintiff's argument is that a more appropriate time limitation would date back to July 2010, when the statute of limitations period expired. *See id.* at 18. Defendant argues that Plaintiff's original class definition limited the class period to July 2012 to the filing of the Complaint (*see id.* at 17 (citing Compl. ¶ 40)) and Plaintiff did not object until May 1, 2015 (*see id.*).

The Court agrees with Defendant. Plaintiff's original class definition specifically limited the relevant time period to July 2012 (*see* Compl. ¶ 40) and Defendant was

---

[3] "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

ORDER – 4

entitled to rely upon that in preparing its discovery responses.  Furthermore, Plaintiff does not provide any evidence that he ever objected to Defendant's limitation.  *See e.g.,* Dkt. # 91 at Ex. G (no specific objection to time period limitation).

Accordingly, to the extent that Plaintiff seeks additional documents at this time stretching beyond the July 2012 date, the Court **DENIES** that request.

c. Whether Defendant Must Produce Documents From Non-U.S. Points of Sale

The next question is whether Defendant properly limited the scope of its document production to only its U.S. point of sale.  In addition to Defendant's U.S. website, it also has 30 non-U.S. points of sale, ostensibly for customers in other countries.  *See* Dkt. # 95 (LaFranchi Decl.) ¶ 2.  This issue pertains to Plaintiff's Document Request Nos. 21, 23, and 26, and Interrogatory No. 10.

Plaintiff's justification for seeking documents for Expedia's non-U.S. points of sale is that "such proof will demonstrate that Expedia can, and does provide accurate baggage fee disclosures in areas outside the United States" to establish whether an injunction is appropriate in this case.  *See* Dkt. # 91 at 5.  Defendant contends that its limitation is appropriate because the Complaint specifically limited the class to individuals who purchased through the U.S. point of sale and because of the high burden and cost of production for documents relating to its 30 non-U.S. points of sale.  *See* Dkt. # 91 at 9-10.

The Court agrees with Defendant.  Plaintiff does not provide any evidence that Expedia's non-U.S. points of sale provide any more accurate baggage fee information than its U.S. point of sale.  The documents cited by Plaintiff's counsel (*see* Dkt. # 94 (Bugaighis Decl.) Ex. A; Dkt. # 95 (LaFranchi Decl.) Ex. A) do not establish that non-U.S. points of sale have *more accurate* baggage fee information, only that they may have *different* information.  This is not surprising, given the obvious fact that Expedia's non-

ORDER – 5

U.S. points of sale are subject to regulations by other countries,[4] are localized to different languages and currencies, and may have different display limitations. *See* Dkt. # 95 (LaFranchi Decl.) ¶ 3. In fact, the documents suggest that non-U.S. points of sale use similar, if not identical, systems for pulling estimated baggage fees. *See id.*

The Court further notes that Plaintiff's original class definition (which he oddly deviates from in his Motion for Class Certification) specifically limits the class to persons "who purchased online airfares from Defendant ***using Defendant's U.S. website and/or the Expedia App***." Compl. ¶ 40 (emphasis added). Whatever reason Plaintiff may have had for changing that class definition (*see* Dkt. # 33 at 15), Defendant had a right to rely upon Plaintiff's original class definition.

At bottom, any documents concerning Defendant's non-U.S. points of sale are of marginal relevance at best, especially as Plaintiff's cited documents do not support his position and because his original class definition was specifically limited to the U.S. point of sale. The Court is further convinced that the burden and expense of producing these marginally relevant documents far outweighs their likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Requiring Defendant to produce these documents would vastly expand an already voluminous production (*see* Dkt. # 94 (Bugaighis Decl.) ¶ 6 (Defendant collected and processed over 10,300 pages of documents and 1,950 megabytes of data)), entail additional translation costs (*see* Dkt. # 95 (LaFranchi Decl.) ¶ 3), and, in the Court's view, potentially require the involvement of additional entities or foreign law (*cf.* Dkt. # 95 (LaFranchi Decl.) ¶ 3 (varying regulatory requirements)). Accordingly, the Court **DENIES** Plaintiff's request for documents concerning Expedia's non-U.S. points of sale.

---

[4] In fact, although not specifically discussed by Defendant, it is possible that these non-U.S. points of sale could be subject to different sets of privacy laws (*cf. United States v. Vetco,* 691 F.2d 1281, 1288 (9th Cir. 1981); *In re Air Crash at Taipei, Taiwan on October 31, 2000*, 211 F.R.D. 374, 377 (C.D. Cal. 2002)), or be tied to another, separate foreign entity, and therefore outside of Defendant's possession, control, or custody (Fed. R. Civ. P. 34(a)(1)).

ORDER – 6

d. <u>Whether Defendant Must Provide Personal Identifying Information</u>

The next question this Court addresses is whether Defendant must produce PII for its customers who complained about baggage fees. Plaintiff contends that there is no authority for Defendant's redaction of customer names and similar identifying information. *See* Dkt. # 91 at 5. Defendant argues that discovery of customer PII is rarely granted at the pre-certification stage. *See id.* at 15. This issue pertains to Plaintiff's Document Request Nos. 23 and 26 and Interrogatory No. 10.

Plaintiff cites *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015), for the proposition that disclosure of certain kinds of PII is commonly permitted during pre-certification discovery in class action lawsuits. In contrast, Defendant cites *Bird Hotel Corp. v. Super 8 Motels, Inc.*, No. CIV 06-4073, 2007 WL 404703, at *2 (D.S.D. Feb. 1, 2007) for the opposite.

The case law generally recognizes that in evaluating requests for the identifying information of putative class members, the Court must balance the privacy rights of those non-party putative class members and the requesting party's need for that information. *See Artis v. Deere & Co.*, 276 F.R.D. 348, 352-53 (N.D. Cal. 2011) ("Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'") (quoting *Wiegele v. Fedex Ground Package Sys.*, 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007)). In conducting this balancing, however, courts note that disclosure of customer "names, addresses, and telephone numbers is a common practice in the class action context." *Id.* at 352 (citing *Currie–White v. Blockbuster, Inc.*, No. C 09-2593 MMC (MEJ), 2010 WL 1526314, at *2 (N.D. Cal. Apr. 15, 2010)); *but see Charles v. Nationwide Mut. Ins. Co., Inc.*, No. 09 CV 94 ARR, 2010 WL 7132173, at *5 (E.D.N.Y. May 27, 2010) (citing *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006)); *see also Putnam v. Eli Lilly & Co.*, 508 F.

ORDER – 7

Supp. 2d 812, 814 (C.D. Cal. 2007) (compelling disclosure, but recognizing that courts have "come out on both sides of this issue").

Plaintiff provides no reason for why he needs this information. Nor can the Court identify any relevance that PII may have to Plaintiff's Rule 23 showing. An examination of the Parties' meet and confer correspondence does not shed any additional light, only that Plaintiff has previously maintained his position that Defendant is incorrect on the law. *See* Dkt. # 91 Ex. G at 85. In contrast, Defendant gives specific reasons for why the privacy concerns connected with its customers' PII is overriding: Plaintiff seeks this PII "in tandem with customers' private travel itineraries." *See* Dkt. # 91 at 16. In other words, disclosure of the specific PII in this case will involve more than the mere contact information at issue in other cases, but also their travel information, including destinations, points of origin, and travel companions.[5] *See id.*

In short, this Court has options. Neither party has made a particularly strong impression on this issue. Nevertheless, the Court finds that in balance, Defendant's argument prevails. Plaintiff simply has not shown how this information is relevant or necessary to making his case for class certification (or even how it is relevant to the substantive merits of his claims) – and Plaintiff certainly was able to move for class certification without such information. *See* Dkt. # 33. In contrast, Defendant has shown that this information is sensitive and that it has already produced substantial information, although with redactions. This seems a prudent course, and has been followed by other courts as well. *See Shaw*, 306 F.R.D. at 301 (noting that the plaintiffs "agreed to accept the requested ACDV data 'with all personal information redacted'" in holding that

---

[5] Although certainly not binding on this Court, the California Supreme Court has ruled that contact information of potential class members is generally discoverable prior to class certification. *See Pioneer Elecs. (USA), Inc. v. Superior Court*, 150 P.3d 198, 205 (Cal. 2007). Nevertheless, in reaching this holding, it noted that "[c]ontact information," would not reveal "personal or business secrets, intimate activities, or similar private information." *Id.* at 206. Such information may be at risk here – some individuals booking travel may be less than enthusiastic about the revelation of their secret rendezvous or escapades.

ORDER – 8

privacy concerns did not outweigh plaintiffs' need for customer contact information). Consequently, the Court **DENIES** Plaintiff's request for PII in connection with his requests pertaining to the baggage fee class.[6]

  e. The "Virgin Australia SaverLite" Objection And Search Parameters

The final issue for this Court to determine is whether Defendant should be able to rely upon a supposed "Virgin Australia SaverLite" objection and decline to produce documents from the files of its other Account Representatives for roughly 170 other airlines. *See* Dkt. # 91 at 6. Apparently, though not entirely clear, Plaintiff also objects to the specific search terms that Defendant used.[7] *See id.* at 20-21. Plaintiff argues, in part, that deficiencies in Defendant's production are highlighted by its subpoena to a third party carrier, Delta Airlines ("Delta"), who responded with 81 pages of documents covering a four year period regarding Defendant's baggage fee displays, including 29 with Delta's Expedia Account Representative. *See id.* at 3. This objection applies to Plaintiff's Document Request Nos. 21, 23, and 26 and Interrogatory No. 10.

Defendant makes two arguments: (1) that it has never relied upon the "Virgin Australia SaverLite" objection, and (2) it tailored its search based upon another of Plaintiff's discovery requests. *See* Dkt. # 91 at 11-13.

Defendant's search for responsive documents incorporated Plaintiff's search terms from another Document Request.[8] *See* Dkt. # 94 (Bugaighis Decl.) ¶¶ 3-4. These search

---

[6] The only issue currently before this Court is whether Defendant should provide PII for Plaintiff's discovery requests pertaining to the baggage fee class. The Court notes that Defendant made the identical objection for certain requests pertaining to the MOBILEGO class. *See* Dkt. # 91 Ex. B at 38-39 (Document Request No. 25).

[7] At the hearing, Plaintiff appeared to clarify that he took issue with the search terms Defendant applied to its ESI, because Defendant did not disclose the specific terms that it used and, more pertinently, how Defendant filtered out certain irrelevant documents. These issues were not actually raised in the substance of the Motion. *See* Dkt. # 91 at 1-6. And the Court struggles to understand how such a simple issue could not have been addressed through a meaningful meet and confer by the Parties' counsel.

[8] Defendant used substantially the same search terms as those from Plaintiff's Document Request No. 25, which requested documents containing: "((("bag! AND (fee OR charge OR disclose))

ORDER – 9

terms were applied to ten custodians, including three personnel in charge of baggage fees, Defendant's Director of Technology and its Transport Operations Manager. *See id.* ¶ 4. Defendant also produced documents from two of its Airline Representatives. *See id.* ¶ 5. Ultimately, these searches resulted in over 10,300 pages of documents and five or six witnesses for deposition. *See id.* ¶ 6.

The Court first addresses whether Defendant conducted an improperly narrowed search by applying the search terms in Plaintiff's Document Request No. 25 to other requests. The Parties indicate that they agreed to abide by the Western District of Washington's Model ESI Agreement. *See* Dkt. # 15 at 4. The Model ESI Agreement contains an extensive discussion of search methodology. *See* Model ESI Agreement at 4 (accessible at http://www.wawd.uscourts.gov/sites/wawd/files/ModelESIAgreement.pdf). Ordinarily, the Parties are to reach an agreement on the applicable search terms, with a limitation to 5 additional search terms absent a showing of good cause. *Id.* Search terms or queries returning more than 250 megabytes of data are presumptively overbroad. *See id.*

There is no indication here whether the Parties agreed to a common set of search terms. In fact, there is no indication here that the Parties have ever abided by their own agreement[9] and consulted with each other prior to proposing search terms. Suffice it to say that in this Court's view, in the absence of additional direction from Plaintiff, Defendant applied reasonable search terms aimed at identifying responsive documents. Those searches contained 13 search terms, all responsive to the discovery requests, and returned nearly eight times the amount of data deemed to be presumptively overbroad.

---

AND (incorrect OR error OR update OR "no info" OR "no fee" OR ALC OR "A La Carte" OR "air admin")) OR "MOBILEGO."" *See* Dkt. # 94 (Bugaighis Decl.) ¶¶ 3-4.

[9] Perhaps illustrating the extent to which the Parties have been preoccupied with mundane discovery issues, the Parties appeared to disagree at the hearing as to whether they had even entered into the Model ESI Agreement. That comes as quite a surprise to this Court as the Parties previously represented to this Court that they had entered into that agreement. *See* Dkt. # 15 at 4.

ORDER – 10

*See* Dkt. # 94 (Bugaighis Decl.) ¶ 6 (over 1,950 megabytes of data). Although there was a failure on both sides to sufficiently adhere to the Model ESI Agreement, any failure was modest, and it is long past the time for correcting such problems. *See* Dkt. # 16 (class discovery deadline set for February 27, 2015). The Court therefore rejects Plaintiff's objection to Defendant's search terms. Should the Parties conduct further discovery on ESI, they are to adhere to their agreement (or non-agreement, whatever it may be).

Next, the Court notes that it does not appear that Defendant has limited its document productions to only the Virgin Australia SaverLite fares. Defendant produced documents pertaining to Philippines Air, for example. *See* Dkt. # 94 (Bugaighis Decl.) ¶ 5. Additionally, the search terms that Defendant used in no way limited the search to only documents pertaining to those fares. To an extent, the Court agrees with Plaintiff that neither his discovery requests nor any version of his class definition limits the scope of the claims to only the Virgin Australia SaverLite fares. At the same time, Plaintiff has not produced any evidence to show that Defendant has actually relied upon this objection. In fact, if anything, Defendant has presented evidence that it has never relied upon this objection in responding to discovery. *See* Dkt. # 94 (Bugaighis Decl.) ¶ 8.

In any event, the real dispute between the Parties boils down to whether Defendant must search through the emails of its Account Representatives for approximately 170 different airlines. *See* Dkt. # 91 Ex. G at 86 (listing airlines). The Court **DENIES** Plaintiff's request. As a preliminary matter, the Court has declined to certify Plaintiff's proposed baggage fee class. Whether the Court will reopen class discovery for the baggage fee class is an issue that it may revisit, but declines to do so at this juncture. Additionally, the Court believes that such a search is likely cumulative. Defendant has already searched the emails of Defendant's "Transport Operations Manager (Jennifer Romero), who serves as a liaison between airline account representatives and Mark LaFranchi for any baggage fee complaints." *See* Dkt. # 94 (Bugaighis Decl.) ¶ 4. Mark LaFranchi is the individual responsible for Defendant's "baggage fee displays and for

ORDER – 11

addressing customer complaints concerning baggage fees." *See* Dkt. # 97 (LaFranchi Decl.) ¶ 1. Plaintiff has not provided sufficient information to show that expanding the search to an additional 170 custodians would reveal any more relevant information.

To be sure, Delta's production gives this Court some pause, as it shows that at least *some* documents escaped Defendant's searches. Nevertheless, the Court is persuaded that such a failure was minimal, given the volume of Delta's subpoena production in comparison to Defendant's – 81 pages allegedly missed within a 10,300 page production barely amounts to a few needles in a haystack. Furthermore, it appears that Plaintiff has already subpoenaed many of these air carriers, whose responses do not reveal any glaring deficiencies in Defendant's production. *See* Dkt. # 94 (Bugaighis Decl.) ¶ 12; *see also* Dkt. # 90 at 7 n.3. Whatever the limited problems with this production, this Court finds only that the Parties should have worked more closely in crafting an adequate electronic discovery protocol for identifying these documents. That some documents escaped any given search is often inevitable, given the volume of information involved.

## IV.   CONCLUSION

For the foregoing reasons, the Court therefore **DENIES** Plaintiff's Motion to Compel in its entirety. At this juncture, the Court will once again remind the Parties of the need to cooperate fully in discovery and to genuinely meet and confer to resolve issues. Given the Court's ruling on Plaintiff's Motion for Class Certification, the Court anticipates that discovery issues may once again arise. When discovery issues arise, the first instinct of the Parties should not be to run to file a motion with the Court, but to engage in a meaningful process of resolving the issues amongst the Parties.

DATED this 13th day of November, 2015.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Court

ORDER – 12